IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KYRAN PARKER | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| MICHAEL J. ASTRUE, | : | |
| Commissioner of Social Security | : | NO. 11-6558 |

FILED
AUG 29 2012
MICHAEL E. KUNZ, Clerk
By_____ Dep. Clerk

## REPORT AND RECOMMENDATION

ELIZABETH T. HEY, M.J.                                  August 29, 2012

Kyran Parker[1] ("Plaintiff") brought this action pursuant to 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security ("Commissioner"), denying his application for supplemental security income ("SSI"), under Title XVI of the Social Security Act. For the reasons that follow, I find that the Commissioner's final decision, concluding at step two of the sequential evaluation that Plaintiff does not suffer from a severe impairment, is not supported by substantial evidence. Therefore, I recommend that the case be remanded to the Commissioner for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

I.     **PROCEDURAL HISTORY**

Plaintiff protectively filed for SSI on June 19, 2008, alleging disability as of May 1, 2008, based on asthma, obesity, headaches, and high blood pressure. Tr. at 118-20,

---

[1] Throughout the medical record, Plaintiff is identified as Kyran Lavon Parker Wilson, and is referred to as Mr. Parker, Mr. Wilson and Mr. Parker-Wilson.

141, 145-46.[2] The application was denied initially and Plaintiff requested an administrative hearing before an Administrative Law Judge ("ALJ"). Id. at 67, 72.

On November 16, 2009, an ALJ held a hearing, at which Plaintiff and his mother testified. Tr. 36-57.[3] In a decision dated December 18, 2009, the ALJ denied the claim, finding that Plaintiff did not suffer from any severe impairment or combination of impairments. Id. at 21-26. On August 25, 2011, the Appeals Council denied Plaintiff's request for review. Id. at 1-3. Therefore, the decision of the ALJ is the final decision of the Commissioner. 20 C.F.R. § 416.1472.

Plaintiff filed his Complaint in this action on October 21, 2011, and submitted his Brief and Statement of Issues in Support of Request for Review on February 6, 2012. See Docs. 3 & 9. Defendant responded on March 7, 2012, and Plaintiff filed a reply on March 26, 2012. See Docs. 11 & 12. The matter is now ripe for review.

## II. LEGAL STANDARD

The court's role on judicial review is to determine whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); Richardson v. Perales, 402 U.S. 389 (1971); Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). Therefore, the issue in this case is whether there is substantial evidence to

---

[2]Plaintiff had filed prior applications for benefits on September 28, 2006, and April 23, 1998. Both applications were denied at the initial level and Plaintiff did not file any appeal. Tr. at 124-25, 142. These denials are not at issue.

[3]The ALJ originally listed the case for August 17, 2009, but continued the hearing when Plaintiff expressed his desire to obtain representation. Tr. at 29-34.

support the Commissioner's conclusion that Plaintiff is not disabled. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate," and must be "more than a mere scintilla." Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 118 (3d Cir. 2000) (quoting Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999)). The court has plenary review of legal issues. Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 431 (3d Cir. 1999) (citing 42 U.S.C. § 405(g)).

To prove disability, a claimant must demonstrate "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last . . . not less than twelve months." 42 U.S.C. § 423(d)(1). The Commissioner employs a five-step process, evaluating:

1. Whether the claimant is currently engaged in substantial gainful activity;

2. If not, whether the claimant has a "severe impairment" that significantly limits his physical or mental ability to perform basic work activities;

3. If so, whether, based on the medical evidence, the impairment meets or equals the criteria of an impairment listed in the "listing of impairments," 20 C.F.R. pt. 404, subpt. P, app. 1, which results in a presumption of disability;

4. If the impairment does not meet or equal the criteria for a listed impairment, whether, despite the severe impairment, the claimant has the residual functional capacity to perform his past work; and

> 5. If the claimant cannot perform his past work, then the final step is to determine whether there is other work in the national economy that the claimant can perform.

See Allen v. Barnhart, 417 F.3d 396, 401 n.2 (3d Cir. 2005) (quoting Sykes v. Apfel, 228 F.3d 259, 262-63 (3d Cir. 2000)) (internal citations omitted); see also 20 C.F.R. § 416.920(a)(4). The claimant bears the burden of proof at steps one through four, while the burden shifts to the Commissioner at the fifth step to establish that the claimant is capable of performing other jobs in the local and national economies, in light of her age, education, work experience and residual functional capacity. Poulos v. Comm'r of Soc. Sec., 474 F.3d 88, 92 (3d Cir. 2007).

### III. FACT RECORD AND THE ALJ'S DECISION

Plaintiff was born on April 17, 1986, and therefore was 22 years old at the time of his alleged onset of disability, and 23 years old at the administrative hearing. Tr. at 39. He is six feet, three inches tall and weighs approximately 310-330 pounds. Id. at 41-42, 127, 258. Plaintiff completed the twelfth grade and worked for about a month as a cook at a Popeye's restaurant. Id. at 39, 52-53, 132.[4] He is single, has a young daughter, and lives with his mother. Id. at 46-47, 50, 272.

In his disability report, Plaintiff stated that his asthma, obesity, headaches and high blood pressure limited his ability to work, explaining that his asthma is getting worse. Tr.

---

[4]In the application process, Plaintiff represented that he had never worked. Tr. at 128. During his consultative examination with Arturo Ferreira, M.D., Plaintiff told the doctor that he worked at McDonald's and in a store for one and a half years. Id. at 272.

at 146. Plaintiff's history of asthma is evidenced by the progress note submitted by Edgar Chou, M.D., from Hahnemann Hospital, predating Plaintiff's alleged disability and mentioning his treatment as a child. Tr. at 221, 263. At the time of Dr. Chou's treatment, July 27, 2005, Plaintiff complained of a cough for 2-3 weeks, but Dr. Chou found clear breath sounds. Id. The doctor prescribed albuterol and Advair,[5] noting that Plaintiff used tobacco and was obese. Id.

Plaintiff was treated by Drexel Primary Care from December 20, 2006, until July 2, 2008. Tr. at 239-63.[6] The records indicate that during that time, Plaintiff was seen seven times. Id. He was treated for asthma, obesity, high blood pressure, skin lesions, and headaches. Plaintiff was treated with Advair and albuterol for his asthma, loratadine[7] for allergies, atenolol and nifedipine ER[8] for his blood pressure, and nicotine polacrilex

---

[5] Albuterol is a bronchodilator used to treat or prevent broncho spasm by relaxing muscles in the airways and increasing airflow to the lungs. See http://www.drugs.com/albuterol.html (last visited 8/21/12). Advair is used to prevent asthma attacks. It contains fluticasone, a steroid, and salmeterol, is a bronchodilator. Advair prevents the release of substances in the body that cause inflammation and relaxes muscles in the airways to improve breathing. See http://www.drugs.com/advair.html (last visited 8/21/12).

[6] The index lists the dates of the records as "2/27/05 to 7/02/2008." Tr. at Index (referring to Exh. 6F). However, the earliest reference in that portion of the records (239-263) is Dr. Chou's July 27, 2005 progress note, which was mistakenly listed on the Index as February 27, 2005. See id. at 263.

[7] Loratadine is an antihistamine used to treat symptoms of allergies. See http://www.drugs.com/mtm/loratadine.html (last visited 8/21/12).

[8] Atenolol is a beta-blocker used to treat angina (chest pain) and hypertension (high blood pressure). See http://www.drugs.com/atenolol.html (last visited 8/21/12).

5

gum[9] for nicotine cessation. Tr. at 247, 250, 253. He had been prescribed hydrochlorothiazide[10] for his blood pressure, but stopped taking it due to headaches. Id. at 39, 253. He was switched to nifedipine XL to control his blood pressure. Id. at 254.

On December 7, 2006, Javad Abdollahian, M.D., examined Plaintiff for the Administration in reference to an earlier application for benefits.[11] He found that Plaintiff was morbidly obese and suffered from bronchial asthma complicated by allergies. Tr. at 226. He found, however, that Plaintiff's activities were virtually unlimited. Id. In the attached RFC assessment, Dr. Abdollahian found Plaintiff could lift and carry up to 50 pounds frequently and had no limitation in standing/walking, sitting, pushing/pulling, postural activities, and other fine motor functions. Id. at 227-28. The doctor did note

---

Nifedipine is a calcium channel blocker, used to treat angina and hypertension. See http://www.drugs.com/nifedipine.html (last visited 8/21/12).

[9]Nicotine polacrilex is used to aid in smoking cessation in adults. See http://www.drugs.com/mtm/leader-nicotine-polacrilex-gum-lozenge.html (last visited 8/21/12).

[10]Hydrochlorothiazide (brand name HCTZ) is a thiazide diuretic (water pill) that helps prevent the body from absorbing too much salt, which can cause fluid retention. It is used to treat edema and hypertension. See http://www.drugs.com/hctz.html (last visited 8/21/12).

[11]Although it appears that Dr. Abdollahian was a one-time examining consultant for the Administration, Peter Chung, M.D., Plaintiff's primary physician at Drexel Primary Care, noted that Dr. Abdollahian was following Plaintiff's hypertension. See tr. at 260. The record does not contain any treatment notes from Dr. Abdollahian other than the assessment completed on December 7, 2006, and there are no other references to that doctor.

some environmental limitations related to Plaintiff's allergies including poor ventilation, chemicals, dust, and fumes/odors/gases. Id. at 228.

During that same period, Marie Geffert, a medical consultant for the Administration, found from reviewing Plaintiff's record that he could occasionally lift or carry 20 pounds and frequently lift or carry 10 pounds. She estimated that Plaintiff could stand or walk 6 hours out of an 8-hour workday and sit about 6 hours out of an 8-hour workday. She also found that Plaintiff had an unlimited ability to push and pull hand and foot controls and no postural or manipulative limitations, and should avoid concentrated exposure to fumes, odors, dusts, gasses, and poor ventilation. Tr. at 230-32. On September 10, 2008, Mary Ryczak, M.D., another medical consultant for the Administration, provided an RFC assessment consistent with Ms. Geffert's earlier assessment. Id. at 266-68.

More recently, Plaintiff was seen by Arturo Ferreira, M.D., on July 13, 2009. Dr. Ferreira found Plaintiff suffered from untreated bronchial asthma, uncontrolled and untreated arterial hypertension, sleep apnea, morbid obesity, and frequent headaches. Tr. at 273. He also noted that Plaintiff was a chronic smoker. Id. Dr. Ferreira found that despite these impairments, Plaintiff had no limitation in lifting, standing/walking, sitting, or pushing or pulling hand or foot controls. Id. at 275-76. Consistent with the earlier assessments, Dr. Ferreira found that Plaintiff had certain environmental restrictions, including poor ventilation, heights, temperature extremes, dust, and fumes, odors, and

7

gases. Id.[12] He also found that Plaintiff could only occasionally kneel, stoop, crouch, balance, and climb. Id.

At the administrative hearing, Plaintiff testified that he sought treatment for his asthma at the hospital every three or four months, the most recent at the time being June 15, 2009, about five months prior to the administrative hearing. Tr. at 40, 54-55.[13] Unfortunately, these hospital records are not contained in the administrative record. At the time of the hearing, Plaintiff was taking Advair and albuterol for his asthma, and using a C-PAP machine[14] for sleep apnea. Id. at 41-43. He stated that his sleep apnea causes him to get less sleep and he cannot stay focused. Id. at 41. He also stated that he uses a nebulizer[15] for shortness of breath about 15 times a day. Id. at 43, 51. Plaintiff explained that he stopped taking blood pressure medication because it gave him headaches, for which he takes Excedrin. Id. at 44, 46. Plaintiff also testified that he cannot walk a full block because his asthma and allergies will "kick in." Tr. at 46. His

---

[12]It appears that Plaintiff began treating with Dr. Ferreira after his consultative evaluation. See tr. at 56-57.

[13]There is some confusion on this point. Plaintiff first stated that the last time he went to the hospital was June 15, 2009, which would have been about five months prior to the hearing. He then said he had stopped smoking three months prior to the hearing and had been to the hospital once since then. Tr. at 40-41.

[14]CPAP is continuous positive airway pressure. Dorland's Illustrated Medical Dictionary, 32nd ed. (2012), ("DIMD"), at 427.

[15]A nebulizer is a device for creating and throwing an aerosol spray. DIMD at 1234.

8

activities included helping with the dishes, laundry, cooking dinner, and cleaning up, although he said that he could not do that much due to his asthma. Id. at 48, 51.

The ALJ found through his review of the record and the administrative testimony that Plaintiff did not have a severe impairment or severe combination of impairments at the second step of the sequential evaluation. Tr. at 23. Although he found Plaintiff suffered from asthma, obesity, and high blood pressure, the ALJ concluded that none of these impairments considered alone or in combination constituted a severe impairment. Id. at 23-26.

In his Request for Review, Plaintiff argues that the decision of the ALJ is not supported by substantial evidence because the ALJ improperly found no severe impairment. Specifically, Plaintiff complains that the ALJ (1) erred in rejecting the opinions of state agency physicians, (2) failed to properly consider Plaintiff's asthma, and (3) disregarded Plaintiff's morbid obesity.[16] In response, Defendant argues the decision of the ALJ is supported by substantial evidence.

## IV. DISCUSSION

### A. The Step-Two Inquiry

As previously mentioned, the ALJ decided this case at the second step of the sequential evaluation, finding that Plaintiff's medically determinable impairments were not severe, whether considered alone or in combination. An impairment is severe if it is

---

[16]For ease of discussion, I have re-ordered Plaintiff's claims.

"of magnitude sufficient to limit significantly the individual's ability to do basic work activities." Santise v. Schweiker, 676 F.2d 925, 927 (3d Cir. 1982); see also 20 C.F.R. § 416.920(c); S.S.R. 96-3p, "Considering Allegations of Pain and Other Symptoms in Determining Whether a Medically Determinable Impairment is Severe." Basic work activities are defined in the regulations as "the abilities and aptitudes necessary to do most jobs," including walking, standing sitting, lifting, pushing, pulling, reaching carrying or handling, or mental activities such as understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, coworkers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. § 416.921(b). "A severe impairment is distinguished from a slight abnormality, which has such a minimal effect that it would not be expected to interfere with the claimant's ability to work, regardless of his age, education, or work experience." Zaccaria v. Comm'r of Soc. Sec., 267 Fed. Appx. 159, 160 (3d Cir. 2008) (citing Bowen v. Yuckert, 482 U.S. 137, 149-51 (1987)).

The Third Circuit has explained that "[t]he step-two inquiry is a de minimis screening device to dispose of groundless claims." McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004) (quoting Newell v. Comm'r of Soc. Sec., 347 F.3d 541, 546 (3d Cir. 2003)). The burden on the claimant at this step is "not an exacting one," and any doubt should be resolved in the claimant's favor. Id. The Third Circuit has instructed that "the Commissioner's determination to deny an applicant's request for benefits at step

two should be reviewed with close scrutiny." Zaccaria, 267 Fed. Appx. at 160-61

(quoting McCrea, 370 F.3d at 360). However, that does not mean

> that a reviewing court should apply a more stringent standard of review in these cases. The Commissioner's denial at step two, like one made at any other step in the sequential analysis, is to be upheld if supported by substantial evidence on the record as a whole. Instead, we express only the common-sense position that because step two is to be rarely utilized as basis for the denial of benefits, its invocation is certain to raise a judicial eyebrow.

Id. (citing McCrea, 370 F.3d at 360-61).

With these standards in mind, I turn to Plaintiff's claims.

### B. Consideration of Consultant's Opinions and Asthma

Plaintiff first complains that the ALJ erred in rejecting the opinions from state agency physician Dr. Ryczak, and an earlier assessment by Ms. Geffert. See Doc. 9 at 7-9.[17] On a related note, Plaintiff also argues that the ALJ improperly employed his own lay analysis in considering the severity of Plaintiff's asthma, see id. at 11, and

---

[17]The assessment provided by Ms. Geffert (tr. at 230-32) and another provided by Dr. Abdollahian (id. at 227-28) predate Plaintiff's alleged onset date of disability. It appears these assessments were conducted in reference to an earlier application. They are, however, relevant to the consideration of the progression/deterioration of Plaintiff's impairments/conditions. See Navas v. Astrue, No. 06-3677, 2007 WL 2317408, at *4 (E.D. Pa. Jul. 30, 2007) (Sanchez, J.) (citing Leonard v. Astrue, 487 F. Supp.2d 1333, 1337 (M.D. Fla. 2007) ("Although ALJ's [sic] conduct an independent review of an applicant's alleged disabilities, they may certainly consider evidence from any prior decisions and hearings."); see also 20 C.F.R. § 416.920(a)(3) (stating all evidence presented and in the agency's records will be considered by the ALJ); Naudin v. Apfel, 119 F. Supp 2d 812, 818 (C.D.Ill. 2000) ("[A]n ALJ may properly rely upon evidence presented at a prior hearing in making h[er] determination.").

impermissibly rejected the state agency opinions with regard to the "significant" environmental limitations found by the state agency consultants. See id. at 8-9. The Commissioner responds that the ALJ properly considered Dr. Ryczak's opinion, giving it less weight, because it was not supported by the medical record as a whole. See Doc. 11 at 6 n.1. The Commissioner also responds that Plaintiff's claims of disabling asthma are not supported by the medical record as a whole. See id. at 4.

After reviewing Plaintiff's records, Dr. Ryczak, a non-examining consultant, found that Plaintiff's obesity, asthma, and hypertension restricted Plaintiff's ability to lift/carry (limited to lifting/carrying 20 pounds occasionally and ten pounds frequently), and climb, and noted that he should avoid concentrated exposure to fumes, odors, dusts, etc. Tr. at 267.[18]

---

[18]Plaintiff noted that Dr. Ryczak's opinion was consistent with the 2006 RFC assessment performed by Ms. Geffert, the other Administration consultant. See Doc. 9 at 7. It is unclear whether Ms. Geffert's assessment would be entitled to any evidentiary weight. Based on a concession by the Commissioner in another case, my colleague, the Honorable David Strawbridge, has noted that the code "LEX" followed by a number on an RFC assessment, without any medical consultant's code, indicates that the assessment was completed by a single decision maker ("SDM"). Stewart v. Astrue, No. 11-1338, 2012 WL 1969318, at *4 n.8 (E.D. Pa. May 31, 2012). Several courts have concluded that the RFC assessment of an SDM is entitled to no evidentiary weight. See Yorkus v. Astrue, No. 10-2197, 2011 WL 7400189, at *4 (E.D. Pa. Feb. 28, 2011) (Strawbridge, M.J., approved and adopted Mar. 25, 2011, Davis, J.) (compiling cases). The December 21, 2006 RFC assessment was signed by Mary Geffert, "LEX351." Tr. at 233. Because Ms. Geffert is not identified as a doctor and there is no medical consultant's code, it appears that she is an SDM. However, I need not decide the weight to be given to Ms. Geffert's RFC assessment because the remainder of the record does not support the ALJ's step-two determination.

"It is well established that a non-examining physician's opinions 'have less probative force as a general matter than they would have if the doctor had treated or examined [the claimant].'" Williams v. Astrue, 317 Fed. Appx. 212, 215 (3d Cir. 2009) (quoting Morales v. Apfel, 225 F.3d 310, 320 (3d Cir. 2000)). The weight given to the opinion of a non-examining source depends on the extent to which the source provides explanation for the opinion and the extent to which the opinion is consistent with other evidence in the medical record. 20 C.F.R. § 416.927(d)(3). After reviewing the file, I conclude that the medical record as a whole supports Dr. Ryczak's opinion, at least to the extent that Plaintiff's asthma is a severe impairment.

In his opinion, the ALJ reviewed the findings and reports of Plaintiff's treating physicians and the examining consultants and concluded that "[t]here is no opinion evidence indicating that the claimant cannot work." Tr. at 25. The first problem with this analysis is that step two, the severity determination, does not require a showing that the claimant cannot work. Rather, the inquiry focuses on the extent to which the impairment or combination of impairments limits the claimant's ability to work. If the impairment imposes significant limitations, it is severe. See Santise, 676 F.2d at 927. If the impairment is a slight abnormality having a minimal effect which would not interfere with work, it is not severe. See Zaccaria, 267 Fed. Appx. at 160 (citing Bowen 482 U.S. at 137). Although the ALJ properly defined a severe impairment in his decision, at no point in his analysis did the ALJ acknowledge the de minimis nature of the step two

13

inquiry or acknowledge the Third Circuit's mandate that reasonable doubts on severity should be resolved in favor of the claimant. See Newell, 347 F.3d at 546-547.

The ALJ went on to evaluate the medical evidence.

> The objective medical evidence contradicts the claimant's allegations [of disability]. At each of his doctor visits, his lungs have been clear on examination, with the exception of one occasion when he had a chest cold. . . . Of note, the only time the claimant has complained of frequent shortness of breath was just one-two months after each of his initial applications for [SSI]. He first applied in September 2006, and complained to his doctor in December 2006 of shortness of breath two-three times per week. He reapplied in June 2008 and in July 2008 he complained of daily asthma attacks, yet his lungs were clear on examination. On every other visit to his doctor in 2005-2008, the claimant had no acute complaints regarding his asthma and stated that he only had episodes during exertion. In a July 2009 examination, he reported only monthly asthma attacks. . . . Additionally, throughout his records there are only occasional complaints of disturbed sleep or headaches. Most telling, during a July 2008 visit the claimant asked his doctor to complete disability forms for [SSI], but the doctor refused.

Tr. at 25. Contrary to the ALJ's recitation, after Plaintiff had been treated for the chest cold in August 2007, his treating physicians noted decreased breath sounds in March 2008. Id. at 251. In addition, although the ALJ found a correlation between Plaintiff's asthma related complaints and his applications for benefits, I note that his complaints of shortness of breath in December 2006, were confirmed on examination, and Dr. Chung

14

described Plaintiff's asthma as moderate and persistent at that time.[19] Id. at 260. Moreover, in July 2005, prior to any application for benefits, Plaintiff complained of a cough for 2-3 weeks with occasional wheezing and complained of a wheezing episode the prior night. Id. at 263. Rather than nefarious embellishment, as the ALJ suggests, the record reveals Plaintiff's extensive history of asthma and periodic exacerbations. Although Dr. Ferreira, an examining consultant for the Administration, concluded that Plaintiff's impairments imposed only postural and environmental limitations, see id. at 265-68, Dr. Ryczak's RFC assessment combined with the notes from Plaintiff's doctors over many years of asthma treatment are sufficient to create a reasonable doubt regarding severity to be resolved in favor of Plaintiff. See Newell, 347 F.3d at 546-47. I conclude that the record as a whole does not support the ALJ's conclusion that Plaintiff's asthma was merely "a slight abnormality" that would not interfere with Plaintiff's ability to work. Zaccaria, 267 Fed. Appx. at 160 (citing Bowen, 482 U.S. at 149-51).

---

[19] Dr. Chung's notes also indicate that Plaintiff had a "peak flow" of 350-400, while the day before his "peak flow" had been 240. The record does not explain the significance of these scores. A peak flow meter measures a person's ability to push air out of the lungs. See http://www.lung.org/lung-disease/asthma/living-with-asthma/take-control-of-your-asthma/measuring-your-peak-flow-rate.html (last visited Aug. 24, 2012). A peak flow meter is most helpful for those with moderate to severe asthma. Id. Although the peak flow is measured on an individualized scale, it can be used to determine when asthma is getting worse, when medications need to be changed, and to determine what causes or aggravates an individual's asthma. Id.

Moreover, I note that one of the ALJ's observations actually lends support to Plaintiff's testimony. The ALJ noted that in Plaintiff's more recent doctors' visits he complained of wheezing on exertion. See tr. at 25 (ALJ opinion), 248 (Jan. 28, 2008), 250-51 (Mar. 2, 2008), 253 (Jul. 2, 2008). Such complaints are consistent with Plaintiff's testimony at the administrative hearing that he would not be able to walk a full city block because his asthma would "kick in." Id. at 45-46.

In sum, guided by McCrea's holding that the step two inquiry is a "de minimis screening device to dispose of groundless claims," 370 F.2d at 360, I find that, in light of the record as a whole, the ALJ's decision at step two is not supported by substantial evidence. I express no opinion on the outcome of the case at the latter steps of the sequential evaluation, but merely find that there is sufficient evidence to clear the severity hurdle.

### C. Consideration of Obesity

Plaintiff also contends that the ALJ erred by disregarding Plaintiff's morbid obesity. See Doc. 9 at 9-10. I note that the ALJ did not ignore Plaintiff's obesity and found that obesity was one of Plaintiff's medically determinable impairments. However, once a finding of a severe impairment has been made, the ALJ must consider the limitations imposed by all of Plaintiff's medically determinable impairments regardless of their individual severity at the later stages of the sequential evaluation. See 20 C.F.R. § 416.923 ("In determining whether your physical or mental impairment or impairments

are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity."). Thus, the ALJ must consider the effects of Plaintiff's obesity (and any other medically determinable impairment) in evaluating the case at steps three, four, and five of the sequential evaluation.

## V. <u>CONCLUSION</u>

In light of the medical record as a whole, I find that the ALJ's decision, denying the case at step two, is not supported by substantial evidence. Guided by the de minimis standard and the Third Circuit's mandate that reasonable doubts on severity should be resolved in favor of the claimant, <u>see</u> <u>Newell</u>, 347 F.3d at 546-547, I conclude that the evidence established that Plaintiff's asthma imposed more than a "minimal effect" which would not interfere with his ability to do work. <u>Zaccaria</u>, 267 Fed. Appx. at 160 (citing <u>Bowen</u>, 482 U.S. at 149-51). On remand, the ALJ will be required to consider Plaintiff's obesity and any other medically determinable impairment at the latter stages of the sequential evaluation, consistent with the governing regulations.

Therefore, I make the following:

## RECOMMENDATION

AND NOW, this 29 day of August, 2012, it is RESPECTFULLY RECOMMENDED that the case be remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Report, Judgment be entered REVERSING the decision of the Commissioner of Social Security for the purposes of this remand only, and the relief sought by Plaintiff be GRANTED to the extent that the matter be REMANDED for further proceedings consistent with this adjudication. The Parties may file objections to this Report and Recommendation. <u>See</u> Local Civ. Rule 72.1. Failure to file timely objections may constitute a waiver of any appellate rights.

BY THE COURT:

ELIZABETH T. HEY
UNITED STATES MAGISTRATE JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KYRAN PARKER | : CIVIL ACTION |
| | : |
| v. | : |
| | : |
| MICHAEL J. ASTRUE, | : |
| Commissioner of Social Security | : NO. 11-6558 |

## <u>O R D E R</u>

GENE E.K. PRATTER, J.,

AND NOW, this          day of            , 2012 , upon careful and independent consideration, the record reveals that the Commissioner did not apply correct legal standards and that the record does not contain substantial evidence to support the ALJ's findings of fact and conclusions of law. As a result, this action must be remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g).

Therefore, it is hereby ORDERED that:

1. The Report and Recommendation is APPROVED AND ADOPTED;

2. Judgment is entered REVERSING the decision of the Commissioner of Social Security for the purposes of this remand only and the relief sought by Plaintiff is GRANTED to the extent that the matter is REMANDED for further proceedings consistent with this adjudication;

3. The Clerk of Court is hereby directed to mark this case closed.

BY THE COURT:

_____
GENE E.K. PRATTER, J.